IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Kyle Campbell**<br>755 Chessie Crossing Way<br>Woodbine, MD 21797<br><br>*Plaintiff*,<br><br>v.<br><br>**Rithm Capital Corp.**<br>799 Broadway, 8th Floor<br>New York, NY 10003<br><br>And<br><br>**Newrez, LLC**<br>1100 Virginia Dr., Suite 205<br>Fort Washington, PA 19034<br><br>And<br><br>**Shellpoint Mortgage Serving**<br>75 Beattie Pl, 300<br>Greenville, SC 29601<br><br>*Defendants* | Case Number: |

## COMPLAINT

Plaintiff Kyle Campbell, by and through undersigned counsel, files this Complaint against Defendants Rithm Capital Corp., Newrez, LLC, and Shellpoint Mortgage Servicing, and states as follows:

1

## **THE PARTIES**

1. Plaintiff Kyle Campbell is a natural person and resident of Maryland. He was employed by Newrez, LLC from February 26, 2019, until January 3, 2023, and subsequently by Shellpoint Mortgage Servicing from January 23, 2023, until his termination on September 27, 2023.

2. Defendant Rithm Capital Corp. is a global asset manager headquartered at 799 Broadway, 8th Floor, New York, NY 10003.

3. It owns and operates Newrez LLC and Shellpoint Mortgage Servicing. Rithm Capital maintains centralized control over operations, compliance, employment, and human resources functions across its subsidiaries.

4. Defendant Newrez LLC is a mortgage lender and servicer headquartered at 1100 Virginia Dr., Suite 125, Fort Washington, PA 19034, and maintains a lending and servicing branch at 6230 Old Dobbin Lane, Suite 200, Columbia, MD 21045.

5. Defendant Shellpoint Mortgage Servicing is headquartered at 75 Beattie Place, Suite 300, Greenville, SC 29601. It is a subsidiary of Newrez LLC and ultimately owned by Rithm Capital Corp. Shellpoint shares executives, HR systems, compliance protocols, and operational oversight with Newrez and Rithm.

6. Rithm Capital Corp. acquired Shellpoint Partners LLC—the parent of Shellpoint Mortgage Servicing—in July 2018. In June 2022, Rithm Capital rebranded from New Residential Investment Corp. and consolidated control of Newrez and Shellpoint.

7. Rithm Capital, Newrez, and Shellpoint function as Plaintiff's joint employers by jointly determining hiring, firing, supervision, compensation, HR policies, and operational

directives. Plaintiff's employment was influenced and controlled by shared corporate management across all three entities.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves claims arising under the laws of the United States, e.g., the Consumer Financial Protection Act (12 U.S.C. § 5567) and the Sarbanes-Oxley Act (18 U.S.C. § 1514A).

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff was employed in this District, Plaintiff engaged in protected activity in this district, the ultimate employment decisions were made in this district and Defendants conduct systematic and continuous business in Maryland.

10. Plaintiff Kyle Campbell was employed by Defendants Rithm Capital Corp., Newrez Mortgage, and Shellpoint Mortgage Servicing in the State of Maryland. Many of the actions and omissions giving rise to this Complaint occurred in connection with that employment within this District.

## FACTS

11. Plaintiff began his employment with Newrez, LLC in 2019.

12. After the acquisition of Ditech and organizational changes within Rithm Capital, Plaintiff transitioned to a Foreclosure Manager position with Shellpoint in January 2023.

13. Plaintiff uncovered Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 violations starting in 2019 and reported them multiple times, including to his managers and later to HR representatives in both Shellpoint and Newrez.

14. Between 2021 and 2023, Plaintiff repeatedly raised concerns about violations of the TCPA, by Defendants Newrez LLC and its parent company, Rithm Capital Corp. Plaintiff discovered that sales representatives at Newrez were placing calls that violated the TCPA, including calls made outside of legal hours, robocalls disconnected in under four rings, and use of spoofed caller ID numbers to mislead consumers.

15. These practices, aimed at inflating lead conversion rates, generated substantial exposure to statutory penalties of $500 to $1,500 per violation.

16. Plaintiff reported these practices to his manager and, later, to human resources and other internal compliance officials.

17. Rather than correcting these violations, Defendants concealed the problem.

18. At the time of these internal actions, Rithm Capital and its subsidiaries continued to engage in conduct that was materially misleading to investors.

19. Despite knowing of potential TCPA liability, Defendants made no disclosures in SEC filings, shareholder communications, or compliance certifications.

20. Defendants also made false and misleading representations during regulatory inquiries, including failing to update and truthfully certify compliance procedures inherited through mergers, such as those following the acquisition of Caliber Home Loans.

21. In making his complaints, reasonably believed these actions constituted violations of federal securities laws, e.g.,: Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), by omitting material facts necessary to make statements not misleading;

22. Sarbanes-Oxley § 302 and § 906 (15 U.S.C. §§ 7241 and 7262), by falsely certifying compliance and financial statements;

23. Exchange Act § 13(a) (15 U.S.C. § 78m(a)), by failing to disclose known material liabilities.

24. Plaintiff also held the good faith reasonable belief that he was complaining of unlawful activity under Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5567, because he reported practices that constituted "unfair, deceptive, or abusive acts or practices" (UDAAPs) under 12 U.S.C. §§ 5531 and 5536(a)(1)(B).

25. Specifically, Defendants' robocalling and call spoofing schemes harmed consumers in the mortgage marketplace, and their concealment of TCPA liability deprived consumers and regulators of truthful information necessary to assess financial practices.

26. Despite internal warnings, Defendants concealed evidence of TCPA infractions and altered Salesforce CRM systems in 2021 to prevent visibility of unlawful calls.

27. In May 2023, Plaintiff made renewed disclosures of the same issues. These included oral and written reports to Shellpoint and Newrez human resources departments regarding the unlawful conduct and the concealment of liability.

28. Plaintiff raised further concerns in 2023 about failures in policy updates following the Caiber Home Loans acquisition. These issues were flagged in a CFPB exam and were known to Plaintiff's managers.

29. In response, Defendants initiated a retaliatory and superficial internal investigation but took no meaningful corrective action.

30. Instead, within three months, Plaintiff experienced escalating retaliation.

31. On August 14, 2023, Plaintiff received his first ever written warning, based on contrived performance concerns that contradicted ongoing managerial support.

32. On September 14, 2023, he was issued a final written warning, again based on manufactured deficiencies.

33. On September 27, 2023, Plaintiff was terminated under the pretext of a reduction in force—despite an expanding workload and active hiring initiatives under his supervision.

34. In retaliation for his disclosures, Plaintiff was issued pretextual disciplinary warnings and ultimately terminated in September 2023 despite positive team performance

35. Plaintiff's disclosures constituted protected activity under the Consumer Financial Protection Act and Sarbanes-Oxley Act. Defendants' adverse actions were motivated by his whistleblower reports and constitute unlawful retaliation.

36. Defendant's actions were willful and/or malicious.

37. Plaintiff administratively exhausted all claims herein.

38. Plaintiff timely filed a complaint under with OSHA under 18 U.S.C. §1514A and 12 U.S.C. § 5567.

39. More than 180 days have passed since Plaintiff filed a complaint with OSHA under Plaintiff's claims under 18 U.S.C. §1514A and the Secretary of Labor has not issued a final decision.

40. More than 210 days have passed since Plaintiff filed a complaint with OSHA under Plaintiff's claims under 12 U.S.C. § 5567 and the Secretary of Labor has not issued a final decision.

41. Plaintiff has administratively exhausted all prerequisites to filing suit.

## Count I

**Retaliation in Violation of the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5567**

42. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Plaintiff made protected disclosures concerning covered under 12 U.S.C. § 5531 and § 5536(a)(1)(A)and (B); §§ 1031 and 1036(a)(1)(B)

44. Plaintiff, in good faith, reasonably believed that Newrez and Shellpoint were engaging in unfair, deceptive and/or abusive consumer practices, including illegal robocalls, spoofed caller IDs, and mass non-compliance with TCPA and state rules and failing to update and truthfully certify compliance procedures inherited through mergers.

45. Plaintiff made internal disclosures to supervisors, human resources, and compliance officials across Newrez and Shellpoint. Within months of these disclosures, he received written warnings and was terminated under pretext.

46. Plaintiff was subjected to a series of adverse employment actions because of or motivated, in whole or in part by Plaintiff's protected activity, including but not limited to a written warning, a final warning, and ultimately termination from his position. These adverse actions materially impacted the terms, conditions, and privileges of Plaintiff's employment, including his eligibility for continued employment, opportunities for promotion, professional advancement, pay and job security. In addition, Plaintiff was targeted by a retaliatory internal investigation initiated by Defendants in direct response to his protected disclosures. The investigation itself had a chilling effect on Plaintiff's workplace reputation, undermined his authority as a manager, and materially affected the conditions of his employment, including his ability to retain his position and pursue

advancement within the organization. Each of these acts was motivated by Plaintiff's whistleblowing activity and constitutes unlawful retaliation in violation of federal law.

47. Defendants' actions in disciplining and terminating Plaintiff constitute unlawful retaliation in violation of the CFPA. As a result, Plaintiff is entitled to all remedies including reinstatement, back pay, compensatory damages, punitive damages, and attorney's fees.

## Count II
### Retaliation in Violation of the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A

48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Plaintiff, in good faith, reasonably believed that Defendants' failure to disclose phone call violations and liabilities to investors, and their false representations during regulatory exams and filings, constituted material omissions and misstatements under SEC Rule 10b-5, and violations of the Securities Exchange Act § 13(a), 15 U.S.C. § 78m(a), which requires truthful and complete disclosure of material financial liabilities.

50. Defendants certified financials under Sarbanes-Oxley § 302 and § 906 (15 U.S.C. §§ 7241 and 7262), knowing of these undisclosed liabilities. These acts constitute fraud and deception in connection with securities transactions.

51. Plaintiff's internal disclosures to managers and HR regarding these concerns constitute protected activity under SOX. Within months of his disclosures, he was disciplined and ultimately terminated.

52. Plaintiff was subjected to a series of adverse employment actions because of or motivated, in whole or in part by Plaintiff's protected activity, including but not limited to a written warning, a final warning, and ultimately termination from his position. These

adverse actions materially impacted the terms, conditions, and privileges of Plaintiff's employment, including his eligibility for continued employment, opportunities for promotion, professional advancement, pay and job security. In addition, Plaintiff was targeted by a retaliatory internal investigation initiated by Defendants in direct response to his protected disclosures. The investigation itself had a chilling effect on Plaintiff's workplace reputation, undermined his authority as a manager, and materially affected the conditions of his employment, including his ability to retain his position and pursue advancement within the organization. Each of these acts was motivated by Plaintiff's whistleblowing activity and constitutes unlawful retaliation in violation of federal law.

53. Defendants' retaliatory actions violate 18 U.S.C. § 1514A. Plaintiff is entitled to all available remedies, including reinstatement, back pay, special damages, compensatory damages, and attorney's fees.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for the following relief on all counts:

a) Plaintiff hereby incorporates by reference all preceding paragraphs and counts as if fully reproduced herein

b) backpay, frontpay or reinstatement, attorneys fees, costs, compensatory damages, punitive damages, pre and post judgment interest, equitable and injunctive relief and damages in amount of in excess of $75,000 (or exceeding that amount for each Count) to be determined by a Jury.

c) Such other relief as the court deems proper and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

*Daniel Kenney*

Daniel E. Kenney, Esq.
Bar No. 18369
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com